UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANDY BROWN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 16-0947-EGS |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Randy Brown, appearing *pro se*, sues the District of Columbia, claiming that its Rehabilitation Services Administration ("RSA") has "engaged in a continuing pattern of discriminatory conduct" against him, in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq*.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*.; and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq*. Am. Compl. at 1 [Dkt. # 3]. The District has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or for summary judgment under Rule 56, which Plaintiff has opposed. For the reasons that follow, the Court will grant the motion for summary judgment and enter judgment accordingly.

**I. BACKGROUND**

RSA is a division of the District's Department of Disability Services that provides vocational and rehabilitative services to individuals with disabilities. *See* Sept. 18, 2017 Mem. Op. at 1 [Dkt. # 14] (denying motion to dismiss). Eligible individuals are assigned a vocational

1

rehabilitation counselor who assists with developing an Individualized Plan for Employment ("IPE"). RSA offers, among other services, vocational training or other post-secondary education and job assistance. *See id*. at 1-2.

## A. Factual Background

### 1. Plaintiff's Allegations

Plaintiff is a client of RSA who "has a cognitive disability but has high aptitude in verbal skills and in abstract reading." Am. Compl. ¶ 2. In February 2009, after three years of providing "funding for rehabilitation," Pl.'s Statement of Disputed Material Facts ¶ 2 [Dkt. # 33], RSA denied "services" to Plaintiff, "stating that [he] had exhausted the maximum expenditure allowed," Am. Compl. ¶ 3. The "suspension" was lifted in 2010. *Id*. But from "2010 through 2013," RSA continued to deny services "by mismanaging Plaintiff's file, assigning to [his] file as many as six or seven counselors resulting in missing documents and, on at least two occasions, the destruction of the file itself." *Id*. ¶ 4. "No sooner than the file [was] restored, a new counselor [was] assigned resulting again in lost documents, causing a continuing pattern of delays and the denial of service." *Id*.

In 2013, when Plaintiff anticipated that he may be unable to attend classes due to yet another lost file, he complained to the RSA's director, "describing the ongoing delays as 'discriminatory' [and] identifying the three-year denial of services unjustifiable." *Id*. ¶ 6. Plaintiff registered for and attended classes in the Fall of 2013 at George Washington University, but RSA withheld "necessary allowances for books, travel and tuition, resulting [in] problems related to train fares, supplies, and calls from the GW business office about delinquent tuition payments." *Id*. ¶ 9.

At some point, Plaintiff was assigned a new counselor, Taylor Cummings, whom Plaintiff describes as "efficient but biased, as indicated by her taking liberties with facts pertaining to Plaintiff's disability." Am. Compl. ¶ 13. Allegedly, Cummings drafted "a letter falsely asserting that Plaintiff 'understands oral communication better than written communication,' a misrepresentation that later [would] interfere[ ] with Plaintiff's rights under the ADA." *Id*. ¶ 14. Cummings also interfered with Plaintiff's "rights by wheedling [him] about signing [an] inaccurate IPE, asking [him] 'to ignore the inaccuracies in the IPE that RSA drafts unilaterally, coercing [him] to sign to be eligible for the withheld allowances." *Id*. ¶ 15.

Plaintiff alleges that "Deputy Director Reese" interfered with his "rights by permitting Mr. Jonathan Keefe to yell shout at Plaintiff, threatening to close Plaintiff's file to coerce Plaintiff's signature." Am. Compl. ¶ 16. Allegedly, when plaintiff asked RSA "to remove the false information," his file was closed but reopened "when DC Protection and Advocacy question[ed] RSA's conduct related to the file closure." *Id*. ¶ 17. But in response to Plaintiff's notifying D.C. Protection and Advocacy about "the inaccurate IPE and file closure," RSA retaliated "by withdrawing funding for art appraisal studies on the pretext that there [were] no jobs." *Id*. ¶ 18. To "salvage" his "career choice," Plaintiff "emphasize[d] the similarities between appraisal studies and legal studies, explaining how the National Appraiser's Examination contains a legal component that requires a year and a half commitment to study contracts and business law." *Id*. ¶ 19. But Deputy Director Reese "reject[ed] the analogy" and denied Plaintiff's modification request "to allow the LSAT to be used as an alternative assessment tool in lieu of RSA's emphasis upon repetitive neuropsychological retesting." *Id*. ¶¶ 19-20 (citing 28 C.F.R. § 35.130) ("General prohibitions against discrimination").

In March 2015, Deputy Director Reese allegedly interfered with Plaintiff's rights under the ADA "by telling Plaintiff to appeal RSA's denial of [his] ADA modification request at the DC Office of Administrative Hearings (OAH), to create issue preclusion, thereby barring Plaintiff's access to a Federal court." *Id*. ¶ 21.

In April 2015, RSA "set[ ] a deadline to schedule a meeting." *Id*. ¶ 23. Allegedly, Plaintiff "request[ed] an advocate and inform[ed] RSA of out-of-town oncology appointments, but RSA impose[d] a 5PM deadline, after the fact," in violation of "ADA proscriptions against retaliation under title II." *Id*. ¶ 24.

### 2. The Evidentiary Record

The District has proffered the Affidavit of Taylor Kenny (formerly Cummings) [Dkt. # 29 at 44-46], who at the relevant time period was Plaintiff's Vocational Rehabilitation Specialist, and various exhibits. Plaintiff has proffered his Affidavit [Dkt. # 36-1 at 1-4] and various exhibits.

Kenney avers that Plaintiff "has received a variety of services from RSA, ranging from assessment services, to post-secondary education and training, counseling and guidance, in-house job placement services, and transportation." Kenney Aff. ¶ 5. In response to Plaintiff's request in October 2014 to modify his IPE "to pursue a career as an attorney," *id*. ¶ 6, Kenny (then Cummings) asked Plaintiff "to participate in updated neuropsychological and vocational evaluations in order to determine the appropriateness of the newly requested employment outcome," as well as "the nature and scope of any VR services that would be included in his modified IPE . . . in keeping with 29 DCMR 110.3," *id*. ¶ 7. Kenny "repeatedly . . . offered to schedule appointments to assist" Plaintiff with providing "the required information and documents and explained to him the necessity of such data." *Id*. ¶ 8. Kenney avers that Plaintiff

4

"did not agree" to participate in the neuropsychological and vocational evaluations and generally "refused to actively participate in the process of developing and modifying his IPE as requested." *Id*. ¶¶ 9-10. Consequently, on March 25, 2015, Plaintiff was notified "of pending case closure" if he failed to participate in the assessments and to schedule an appointment by April 27, 2015. *Id*. ¶ 11.

On March 16, 2015, Plaintiff e-mailed Director Laura L. Nuss requesting that she "assist me with respect to my request for modifications in policy and practices." Def.'s Ex. 3 [Dkt. # 29 at 37]. In a letter to Plaintiff dated March 27, 2015, Director Nuss wrote:

> I received your letter requesting a policy exception regarding your request for the agency to provide support for you to attend Law School. My understanding is that your VR Specialist, Taylor Cummings, has explained that the first question that needs to be addressed is not your ability to participate in law school, but the appropriateness of attorney as an employment goal for you. Ms. Cummings has provided a clear explanation of the concerns she has about changing your employment goal. She recommended that you obtain an assessment in order for her to be able to reconsider changing the goal. She has also reached out several times in an attempt to have you come in for an appointment to discuss these issues. To date, you have refused to schedule an appointment with Ms. Cummings. She sent you a letter on March 25, 2015, advising you that if you are unwilling to meet to discuss how to move your case forward, that your case would be closed on April 27, 2015.

Pl.'s Ex. 5 [Dkt. # 36-1 at 20]. Nuss conveyed her "hope" that Plaintiff would "respond to Ms. Cummings and schedule a meeting to discuss these issues with her." *Id*. She also provided, as did Cummings, contact information for the Client Assistance Program at University Legal Services, Inc. *Id*.

In an e-mail to Plaintiff on March 31, 2015, Cummings recounted that she had "relayed" his "request for modification in policy to Mr. Andrew Reese and he instructed you to communicate with me to make an appointment." Def.'s Ex. 3 [Dkt. # 29 at 36]. Cummings informed Plaintiff that notwithstanding his request to Director Nuss, the information in her

5

March 25, 2015 letter "still stands and appointment is to be scheduled with me by Monday, April 27th to prevent case closure." *Id*. She explained that the purpose of the meeting "is to allow for an open conversation of the reasons for my request for updated evaluations and to discuss further services, as you've requested. I have also discussed with you that I will be able to provide an outline for our meeting at least one week in advance and will provide a written summary for you after our meeting." *Id*. Cummings stressed in closing that "in order to move forward with your case, we must have a scheduled appointment." *Id*.

In a letter addressed to Cummings on April 2, 2015, Plaintiff states his purported "need to receive a written explanation of RSA's posture related to my modification request prior to scheduling a meeting" and takes issue with Cummings' agreement to provide him "only an 'outline' and a 'summary' . . . devoid of any analytically reasoned explanation of facts and laws in support of RSA's position related to my ADA request for a waiver of policy." Pl.'s Ex. 6 [Dkt. 36-1 at 22]. Plaintiff surmised that absent "a written explanation of RSA's position well in advance[,] any scheduled meeting . . . would invariably prove to be bewildering[.]" *Id*.

By letter of April 27, 2015, Cummings informed Plaintiff, consistent with the earlier warnings, that (1) his case seeking modification of the IEP was closed since he failed to provide the "requested documentation," and (2) he could appeal that decision within 30 days. Def.'s Ex. 1 [Dkt. # 29 at 27]. Cummings enclosed a "Right to Appeal" notice setting out various actions Plaintiff could take at the administrative level.

Plaintiff avers that on April 27, 2015, he "drove from Philadelphia with [a] medical excuse after receiving treatment" and "email[ed] the excuse to RSA." Aff. of Randy Brown ¶ 25. Plaintiff does not dispute that he failed to appeal the decision to close his case "through

administrative remedies available to him as outlined in his Right to Appeal letter." Def.'s Statement of Undisputed Facts ¶ 4.

### B. Procedural Background

On April 25, 2016, Plaintiff lodged with the Clerk of Court a complaint and application to proceed *in forma pauperis* ("IFP"). The IFP application was granted on May 18, 2016, and this case was formally filed the next day, on May 19, 2016. The three counts of the Amended Complaint invoke Title II of the ADA (Count 1), Section 504 of the Rehabilitation Act (Count 2), and Title II, Chapter 14 of the DCHRA (Count 3). Plaintiff seeks injunctive relief and "any restitution that is lawful." Am. Compl. at 33.

In its Answer to the Amended Complaint [Dkt. # 16], the District asserts among other defenses that Plaintiff (1) failed to exhaust his administrative remedies, (2) failed to meet the applicable statute of limitations, and (3) would have been subjected to the alleged actions even if he were not disabled. Answer at 27-28. In addition, the District contends that the challenged actions were based on legitimate non-discriminatory reasons. *Id*. at 27. The Court issued a schedule for discovery, which concluded on September 21, 2018. The District filed its dispositive motion on November 7, 2018 [Dkt. # 10]; Plaintiff filed oppositions on December 17, 2018, and December 27, 2018 [Dkt. ## 33, 36], which the Court considers together as one opposition; and the District filed its reply on January 2, 2019 [Dkt. # 35].

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

Although the District mentions Federal Rule of Civil Procedure 12(b)(1), Mot. at 1, it has not advanced a supporting argument. The complaint clearly raises federal questions over which

this Court has original jurisdiction.  *See* 28 U.S.C. § 1331.  Therefore, the motion to dismiss on jurisdictional grounds is denied.

**B. Summary Judgment**

Because the court will rely on matters outside the complaint and answer to resolve the District's motion, it will apply the standards for summary judgment.  Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  The moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

To defeat summary judgment, the nonmoving party must demonstrate through evidence of his own that there is a genuine issue of material fact.  *Id*. at 324.  A material fact is one that is capable of affecting the outcome of the litigation.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A genuine dispute is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.  Still, a non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its position.  *Id*. at 252.  If "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id*. at 249-50 (citations omitted).  Summary judgment is appropriate also if, after discovery, a plaintiff fails to offer "evidence on which the jury could

reasonably find for [him]" on an essential element of his claim. *Id*. at 252; *Celotex*, 477 U.S. at 322; *see also* Nov. 7, 2018 Order [Dkt. # 31] (explaining same to Plaintiff).

### C. Applicable Laws

Under Title II of the ADA "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail on a Title II claim, Plaintiff must show "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Smith v. Henderson*, 944 F. Supp. 2d 89, 104 (D.D.C. 2013) (quoting *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013)).

Section 794 of the Rehabilitation Act proscribes the same type of conduct by recipients of federal funds and requires a similar but somewhat stricter showing. *See Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992) ("To prevail on the Rehabilitation Act claim, plaintiff must show: (a) she is a disabled person, (b) she was "otherwise qualified" to receive treatment from defendant, (c) defendant refused to treat her "solely by reason of" her disability, and (d) defendant receives federal financial assistance."); *Adams v. District of Columbia*, 618 Fed. App'x 1, 2 (D.C. Cir. 2015) (per curiam) (claims under § 794 of the Rehabilitation Act "are governed by the same standards of liability as govern the ADA claims") (citing 29 U.S.C. § 794(d)); *see also Henrietta D. v. Giuliani*, 119 F. Supp. 2d 181, 206 (E.D.N.Y. 2000) ("Although there are subtle differences between these disability acts, 'the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under

section 504 of federally assisted programs and activities.' ") (citing 28 C.F.R. Pt. 35, App. A); *Sumes v. Andres*, 938 F. Supp. 9, 11 (D.D.C. 1996) (same). The "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq*.) . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. § 794a. And Title II of the ADA adopts the "remedies, procedures, and rights set forth in section 794a of Title 29[.]" 42 U.S.C. § 12133.

The District of Columbia Human Rights Act proscribes discrimination based on disability as well. *See* D.C. Code § 1402.41. The Court's analysis of the foregoing federal claims applies equally to any analogous claims under the D.C. Human Rights Act. *See Boykin v. Gray*, 895 F. Supp. 2d 199, 219 (D.D.C. 2012) ("District of Columbia courts interpreting the DCHRA 'have generally looked [for guidance] to cases from the federal courts' arising under federal civil rights statutes. . . . Therefore, the D.C. law is applied in the same manner as the parallel federal anti-discrimination provisions.") (quoting *Whitbeck v. Vital Signs, Inc*., 116 F.3d 588, 591 (D.C. Cir. 1997); *Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Engineers, P.C*., 950 F. Supp. 393, 405 (D.D.C. 1996) (other citations omitted)).

### III. DISCUSSION

The District contends that: (1) claims one and two should be dismissed because Plaintiff failed to exhaust his administrative remedies under the ADA and the Rehabilitation Act; (2) all three claims under the ADA, the Rehabilitation Act, and the DCHRA are time-barred; and (3) the discrimination claims fail on the merits because RSA had legitimate non-discriminatory reasons for the challenged actions.

### A. Failure to Exhaust

It is established that a plaintiff's failure to exhaust administrative remedies under the anti-discrimination laws does not deprive the court of subject matter jurisdiction. *See Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019) (holding that "Title VII's charge-filing instruction is not jurisdictional" but is instead "ranked among the array of claim-processing rules that must be timely raised [by the defendant] to come into play"). Nor does a claim brought beyond the applicable statute of limitations. *See Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015) (noting that Title VII's "time limits 'function[ ] like statutes of limitations,' and thus 'are subject to equitable tolling, estoppel, and waiver'" and "nothing in the Rehabilitation Act . . . warrants treating the same administrative time limit differently based on which claims are involved'") (quoting *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)).

Plaintiff does not dispute that he failed to properly exhaust his administrative remedies. Instead, he counters that exhaustion was not required. *See* Opp'n Mem. at 5 [Dkt. # 36 at 3]. The Court agrees. "[Section] 794 of the Rehabilitation Act proscrib[ing] discrimination by . . . federally funded entities . . . does not explicitly require the exhaustion of administrative remedies." *Jones v. Univ. of D.C.*, 505 F. Supp. 2d 78, 85 (D.D.C. 2007). And courts have held that litigants under Title VI -- the procedures of which § 794 of the Rehabilitation Act and Title II of the ADA have adopted -- "need not exhaust their administrative remedies before pursuing their private cause of action in federal court." *Neighborhood Action Coal. v. City of Canton, Ohio*, 882 F.2d 1012, 1015 (6th Cir. 1989); *see Smith v. Henderson*, 944 F. Supp. 2d 89, 100 (D.D.C. 2013) ("Title VI suits for individual claims of discrimination . . . need not be exhausted") (quoting *Milbert v. Koop*, 830 F.2d 354, 356 (D.C. Cir. 1987) ("Title VI, which relates to the cutting off of funding of federal programs when certain prescribed discriminatory

conduct occurs, does not contain exhaustion requirements similar to those of Title VII.")))._ Therefore, the Court denies the District's motion to dismiss on exhaustion grounds.

### B. Statute of Limitations

It is well-established that when, as in this case, a federal law does not specify a time period in which to bring a claim, courts should apply "the statute of limitations from an analogous state statute." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (noting that since 1830, "state statutes have repeatedly supplied the periods of limitations for federal causes of action when the federal legislation [has] made no provision") (internal quotation marks and citation omitted)). As indicated above, the DCHRA, proscribing disability discrimination, is the local law most comparable to the ADA and the Rehabilitation Act. It requires that a "private cause of action" be brought "within one year of the unlawful discriminatory act, or the discovery thereof[.]" D.C. Code § 2-1403.16. The District of Columbia Court of Appeals, which is accorded deference on questions of D.C. law, has applied "[t]he same statute of limitations and tolling provision[s]" to claims "brought under either the Rehabilitation Act or the [DC]HRA." *Jaiyeola v. District of Columbia*, 40 A.3d 356, 369 (D.C. 2012). And this Court has followed suit. *See Congress v. District of Columbia*, 324 F. Supp. 3d 164, 172 (D.D.C. 2018) (finding "*Jaiyeola's* reasoning persuasive," insofar as "the D.C. Human Rights Act and the Rehabilitation Act[ ] have a 'shared purpose and ambitious aims'—both seek to end discrimination against individuals with disabilities," provide private causes of action for disability discrimination, and "allow for a similar set of remedies") (quoting *Jaiyeola*, 40 A.3d at 367)); *Ware v. Hyatt Corp.*, No. 12-cv-0395, 2013 WL 12321372, at *15 (D.D.C. Mar. 27, 2013) (adopting "the one-year statute of limitations from the DCHRA as the statute of limitations applicable to the Rehabilitation Act" claim).

The predicate discriminatory action for accrual purposes is unclear. In opposing summary judgment, Plaintiff suggests that his claim does not "stem[ ]" from the closure of [his] case" but rather from RSA's alleged "refus[al] to modify a schedule to accommodate Plaintiff's cancer treatment[.]" Opp'n Mem. at 1. Still, Plaintiff returns to the closing of his case on April 27, 2015, and the circumstances leading up to that decisive action. *See id*. at 2. The Court finds that Plaintiff's claim accrued on April 27, 2015, thereby triggering a deadline of April 27, 2016, to file a civil action.

It is long settled that a plaintiff is not responsible for the administrative delay associated with the Court's review of an IFP application submitted with the complaint. *See Johnson v. Interstate Mgmt. Co., LLC*, 871 F. Supp. 2d 1, 4 (D.D.C. 2012), *aff'd*, No. 14-7164, 2015 WL 4072092 (D.C. Cir. June 29, 2015). In such circumstances, the date the documents are received control. The Clerk's May 19, 2016 docket entry establishes the receipt of Plaintiff's "Initiating Pleading & IFP Application" on April 26, 2016, thereby rendering the claims predicated on the closure of Plaintiff's case on April 27, 2015, timely.

That said, Plaintiff's factual allegations describe three incidents liberally construed as supporting his "continuing pattern of discriminatory conduct" theory, Am. Compl. at 1, which if proven could render otherwise untimely violations actionable. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-14 (2002) (discussing continuing violation doctrine). First, in 2009, after three years of providing services, RSA informed Plaintiff that he was "ineligible for further services." Pl.'s Facts ¶ 2. Second, in the summer of 2013, when "in response to a pending discrimination complaint for denying services, RSA authorize[d] Plaintiff to enroll at George Washington University but sabotages" his "efforts, by refusing to pay for books, transportation and tuition." *Id*. ¶ 4. Third, on May 23, 2014, "Mr. Jonathan Keefe . . . yell[ed] threats and

13

insults for approximately 45 minutes to coerce Plaintiff to sign a false IEP" and then closed Plaintiff's file for "insubordination" when he refused. *Id.* ¶ 5. Plaintiff claims that the IPE was "riddled with false statements alleging that payments had been made for items about which [he] knew nothing" and that he "had decided to return to teaching and to forego art appraisal studies." Pl.'s Aff. ¶ 13 [Dkt. # 36-1 at 3]. The file was reopened with the assistance of University Legal Services. Pl.'s Facts ¶ 5.

Plaintiff does not allege that those decisions had anything to do with his disability. Rather, he admits that RSA "promise[d]" to pay the expenses to attend GWU "if [he] signed a false IEP to forego services," *id.* ¶ 4, and that his refusal to sign "a false IEP" is what triggered the encounter with Keefe, *id.* ¶ 5. But the mere fact that the IEP may have been false is not material to the outcome of this discrimination case. *Cf. Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (courts "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive") (internal quotation marks and citation omitted)). Moreover, the foregoing isolated events do not support a pattern, much less a "continuing pattern of discriminatory conduct." Am. Compl. at 1. And "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. Therefore, the Court agrees that any claims based on occurrences before April 27, 2015, are barred by the one-year statute of limitations and grants summary judgment to the District on any such claims.

### C. The Merits

#### 1. Disability Discrimination

Accepting that Plaintiff has stated a prima facie case of disability discrimination, and in the absence of any direct evidence of such discrimination, the Court turns to the familiar burden-

shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and the central question of whether Plaintiff has "produced sufficient evidence for a reasonable jury to find that [RSA's] asserted non-discriminatory reason [for the case closure in April 2015] was not the actual reason and that [RSA] intentionally discriminated against the plaintiff on a prohibited basis," *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (citations omitted).

The District has articulated a legitimate, nondiscriminatory reason for closing Plaintiff's case, in that he simply refused to "participate in the process of developing and modifying" his IPE. Kenney Aff. ¶ 9; *see id*. ¶¶ 5-8 (describing the process); *see also* Director Nuss' letter [Dkt. # 36-1 at 20]. Plaintiff has offered no contrary evidence, let alone evidence from which a reasonable jury could find that RSA closed the case because of his "cognitive disability." Am. Compl. ¶ 2. Consequently, the District is entitled to judgment as a matter of law on Plaintiff's discrimination claim.

### 2. Failure to Accommodate

Plaintiff suggests that RSA failed to reasonably accommodate his schedule for cancer treatments. Discrimination under the ADA and Rehabilitation Act "includes the failure to provide 'reasonable accommodations' to a 'qualified individual with a disability,' unless doing so would constitute an undue hardship." *Martin v. District of Columbia*, 78 F. Supp. 3d 279, 317-18 (D.D.C. 2015) (quoting 42 U.S.C. § 12112(b)(5)(A) (citing *Gordon v. District of Columbia*, 480 F. Supp. 2d 112, 115 (D.D.C. 2007)). In the context of Title II of the ADA and § 504 of the Rehabilitation Act, "[p]ersons with disabilities are 'qualified' if they, 'with or without reasonable modifications to rules, policies, or practices . . . mee[t] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by

a public entity.'" [1] *Tennessee v. Lane*, 541 U.S. 509, 517 (quoting 42 U.S.C. § 12131(2)). But a cancer diagnosis is not per se a disability under the ADA or Rehabilitation Act, and Plaintiff has pled no other facts establishing a disability. *See Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008) (noting that 'Disability" is [a] term of art under the statute[s] that carries a specific meaning").

Notwithstanding the pleading defect, and for the sake of completeness, the Court finds no triable issue on the reasonable accommodation claim. Plaintiff has offered nothing to present to a jury establishing when (and how often) the alleged scheduling issue arose. Nor has he adequately disputed the overwhelming evidence in the record that he was "repeatedly . . . offered" times for "appointments" to participate in the process of modifying his IPE. Kenney Aff. ¶ 8. The fact that Plaintiff was given nearly a month -- between the warning letter and the actual closure letter – to schedule an appointment for "an open conversation" about his request, Def.'s Ex. 3, does not bode well for him either.

Plaintiff proffers a medical statement dated April 27, 2015, which he contends "informs RSA of the need [to] make reasonable modifications." Opp'n Mem. at 14 [Dkt. # 36 at 12]. The statement is dated April 27, 2015, which is not only the date of RSA's case closure letter but the date that Plaintiff avers he emailed the statement to RSA. Aff. of Randy Brown ¶ 25. The statement lacks probative value because "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff . . . has requested an accommodation which the defendant . . . has denied." *Flemmings v. Howard Univ.*, 198 F. 3d 857, 861 (D.C. Cir. 1999). In other words, "[t]o create an issue for the jury with respect to this request," Plaintiff "was required

---

[1] Plaintiff requested a modification of policy or practice to avoid what he viewed as "duplicative neuropsychological testing," Pl.'s Ex. 6 at 24, but his proposal to rely instead on the LSAT as an assessment tool, *id.*, is baffling, and Deputy Director Reese rightly "reject[ed] the analogy." Am. Compl. ¶ 20.

to produce sufficient evidence that, after [the] request, [the District] refused to make an accommodation." *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1308 (D.C. Cir. 2010) (citations omitted). Plaintiff has adduced no such evidence. Consequently, the District is entitled to judgment on this claim as well.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. A separate order accompanies this Memorandum Opinion.


                                                         SIGNED:    EMMET G. SULLIVAN
                                                         UNITED STATES DISTRICT JUDGE

DATE: September 12, 2019